UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICHOLE MARIE McDANIEL, et. al.,

        Plaintiff,           1:04-CV-757
                                              (GLS)
     v.
THE COUNTY OF SCHENECTADY, et. al.,

        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Office of Elmer R. Keach, III<br>1040 Riverfront Center<br>P.O. Box 70<br>Amsterdam, New York 12010 | ELMER R. KEACH, III, ESQ |
| **FOR ELMER R. KEACH, III:** | |
| Hinshaw, Culbertson Law Firm<br>780 Third Avenue<br>4th Floor<br>New York, New York 10017 | JOHN R. SUPPLE, ESQ |
| **FOR THE DEFENDANTS:** | |
| Goldberg, Segalla Law Firm<br>885 Third Avenue<br>New York, New York 10022-4834 | WILLIAM J. GREAGAN, ESQ. |

**Gary L. Sharpe**
**U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. Introduction**

There are two unresolved questions remaining in this action: (1) should the judge recuse himself; and (2) should the court sanction plaintiffs' counsel, Elmer Keach, III, Esq. The question of sanctions arises from both the court's *sua sponte* motion and the motion of defense counsel, William Greagan, Esq. The recusal question arises from Keach's response to the court's motion. For the reasons that follow, the court denies the recusal motion and declines to sanction Keach.

**II. Background**

The question of sanctions arises in the context of a class action litigation consumed by attorney acrimony throughout its four year history. During settlement negotiations in 2006, the attorneys collectively filed eight letters that were purportedly related to their negotiations.[1] (*See* Dkt. Nos. 86, 87, and 91 through 96.) While the letters reflected an apparent intention to keep them free from public disclosure, they were not filed *ex parte* as would have been authorized if the parties were seeking judicial

---

[1] Judicial practices in this district vary regarding the handling of settlement documents. Some judges never file the documents, instead housing them in a chamber's folder. Others file the documents under seal. These practices are in a state of flux, principally because of new electronic filing procedures that often leave filing decisions in the hands of lawyers.

assistance with their settlement efforts. Furthermore, the parties had no separate confidentiality agreement precluding disclosure of the letters. Greagan sent five letters and requested that they be filed under seal. Keach sent three letters together with sealing requests, but also requested that the court refrain from filing one of the three letters.[2]

Thereafter, the parties stated they had tentatively settled the suit, and the court scheduled a date for the preliminary approval of the class action settlement. After the court entered a preliminary approval order, the attorneys continued their acrimonious relationship which resulted in further judicial intervention and an amended preliminary order. After still further judicial intervention, the final approval hearing was held on September 5, 2007. Thereafter, the court issued a November 5, 2007, decision and order approving the settlement, but class counsels' attorneys fees were reduced. Judgment was entered on November 21, 2007. On December 4, 2007, class counsel appealed the court's fee award.

Thereafter, Keach wrote the court on January 4, 2008, and requested the earlier settlement letters be unsealed. (See Dkt. No. 157.) As

---

[2]As the court discussed during a later conference, the letters themselves did not disclose subjects classically associated with settlement issues. (*See* 2/27/08 Conference Transcript at 15-16; Dkt. No. 173 (hereinafter, "C.T.").)

3

pertinent, his letter stated:

> Class Counsel plans to include these documents in their Joint Appendix regarding the pending appeal on attorneys' fees. Class Counsel does not believe there is any present basis to have these items filed with the Court under seal, nor should they have to be filed under seal with the Second Circuit, given that the settlement was finally approved by the Court and a judgment to that effect has been entered.

(*See id.*)  On January 10, 2008, the court denied his application, stating the Second Circuit had full access to the district court's sealed documents. (Dkt. No. 158.)  On the same day, a local newspaper published an article quoting the court's order.  (*See* C.T. at 26-27.)

Thereafter, Greagan contacted the clerk's office requesting guidance on disciplinary procedures since he apparently intended to seek Keach's disbarment.  The court's courtroom deputy referred Greagan to the District's Local Rules.  Despite those rules, Greagan filed a letter with the court seeking disciplinary action against Keach, and mailed a copy of the letter to Keach.  Given the sensitivity of Greagan's allegations, the longstanding animosity between Greagan and Keach, and the court's regard for fundamental fairness, the court elected not to file Greagan's letter.  Instead, it scheduled a conference to discuss the matter.

In Greagan's letter, he mentioned his conversation concerning

4

disciplinary procedures. When Keach received his copy, he called chambers on January 23, 2008, and spoke to the court's courtroom deputy. As reflected in a "chambers only" docket entry on that date, Keach accused the court of engaging in *ex parte* communications with Greagan, and demanded an explanation. After his telephone conversation, Keach apparently thought better of his accusation, and wrote the court a letter ostensibly addressing the unrelated Greagan disbarment application. In a footnote, he stated: "I want to make clear that by making this request, I am not implying that either the Court or its staff engaged in any impermissible ex parte communications with Mr. Greagan about the substance of his application to have me disbarred." (*See* 1/23/08 Keach Ltr. at 2, fn. 1, Dkt. No. 161; *see also* C.T. at 49-50.)

On February 27, the court held the scheduled conference. The court denied Greagan's unfiled disbarment motion, again informing him that disciplinary matters must be referred to the Chief Judge. After reciting the history of the settlement letters and the district's varying filing procedures post-electronic filing, the court addressed two specific issues: first, Keach's letter to the court seeking to unseal because of the pending appeal; and secondly, Keach's allegations regarding improper judicial *ex parte*

communications.

As to the first issue and referencing the court's order denying his application to unseal, the following exchange occurred:

> The Court: So at the same time you requested that I unseal documents for purposes of your appeal before the Second Circuit, did you disclose my order denying that to the Times Union as it related to their newspaper article that day?
>
> Mr. Keach: Relative to Your Honor's order which was placed on the ECF system, yes.
>
> The Court: Did you lie to me in your letter to me telling me that you wanted the documents unsealed for purposes of your appellate proceedings when, in truth, you wanted them unsealed so you could disclose something to the Times Union?
>
> Mr. Keach: No.
>
> The Court: Was that one of your purposes in requesting unsealing by me?
>
> Mr. Keach: I believe those documents should be subjected to public disclosure, yes...
>
> The Court: Did you disclose that purpose to me in your application to unseal?
>
> Mr. Keach: No, I don't believe that was reflected in the letter.
>
> The Court: All right.  So what you're telling me is you engaged in subterfuge with an application to the Court to unseal documents when, in fact, you had an ulterior motive for unsealing those documents that had nothing to do with the reason for which you asked me to unseal them; is that what you're telling me?

6

> Mr. Keach: I don't believe that is – that is accurate, no. I believe - and I wrote in that letter that there was no present reason that those documents should be filed under seal. And so the record is clear -
>
> The Court: Are you telling me you were without knowledge that the Circuit has authority to review unsealed – or sealed documents in connection with any appeal they're entertaining of materials or issues that are ongoing in the district court?
>
> Mr. Keach: Actually, Your Honor, the Second Circuit had to specifically request that those documents be provided by the clerk's office....

(*See* C.T. at 26-28.) During a subsequent colloquy, the court told Keach that his unsealing letter was disingenuous fueled by his own ulterior motives, not some Second Circuit protocol. (*See id.* at 48-49.) Parenthetically, and consistent with appellate procedure, the court subsequently transmitted the sealed documents to the Circuit at its request. (*See* Dkt. Nos. 163-64 & 2/06/08 Chambers Entry.)

As to the Keach's allegation of *ex parte* communications and his subsequent letter, the court advised Keach as follows:

> The Court: ... In my view that is a specific, hang up the phone, oh, my God, what did I just say to the Court. Let me do what I have a history of doing, denying that I meant what I said and I'll document it in a letter so that later on I've got plausible deniability over the fact that I just accused the Court of illegal ex parte communications.

7

(*See* C.T. at 50.)

After then reciting Keach's recurring problems with other judges in the Northern District, the court then admonished:

> The Court: ... You have been dancing on a thin wire for a long time in this district, Mr. Keach. And you ought to be mindful of what you said about a half an hour ago that these kinds of proceedings have a dramatic impact on your ability to earn a living in a variety of courts in a variety of jurisdictions. I appreciate that. I'm not sure that you appreciate it. I'm not sure you listen to yourself when you say those things, as is demonstrated by this pattern of behavior that I've just recited to you.

(*See id.* at 51-52.)

At the conclusion of the hearing, the court issued a *sua sponte* order directing Keach to show cause as to why he should not be sanctioned. He responded with a recusal motion and opposition to the imposition of sanctions. (*See* Dkt. No. 182.) Greagan also filed a sanctions motion. (*See* Dkt. Nos. 176-77.)

## III. Discussion

### A. Recusal

Keach seeks recusal pursuant to 28 U.S.C. §455. He claims that the court's comments during the underlying proceedings reflect a personal bias, and that the court cannot resolve factual disputes without a hearing

8

pitting his credibility against that of court personnel.

Recusal is mandated when a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Similarly, § 455(b)(1) provides for recusal when a judge "has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). Furthermore, § 144 requires recusal if a judge harbors a "personal bias or prejudice" against a party. 28 U.S.C. § 144. The decision to recuse rests within the sound discretion of the judge whose recusal is sought. *See United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir. 1992) (citation omitted).

Because the statutory language in §§ 144 and 455(b)(1) is similar and the scope of both is identical, courts have concluded that they should be construed together. *See Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 333 (2d Cir. 1987). Under both, the recusal standard is "whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Id.* Significantly, "[t]he alleged bias and prejudice to be disqualifying must stem from an *extrajudicial source* and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966) (emphasis

added); *see also Apple,* 829 F.2d at 333 (noting that the analysis "looks to extrajudicial conduct as the basis for making such a determination, not conduct which arises in a judicial context").  Moreover, the Supreme Court has observed that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality charge." *Liteky v. United States,* 510 U.S. 540, 555 (1994).

As evidence of bias, prejudice and impartiality, Keach references: (1) several statements made by the court during the February 27 conference; (2) the court's consideration of extrajudicial matters concerning past uncivil behavior; and (3) the court's failure to credit his letter disavowing any intention of accusing the court of engaging in *ex parte* communication. Specifically, Keach claims that the court showed bias and prejudice when it "forcefully expressed its view that [his] past alleged instances of uncivil conduct make it more likely, if not certain, that he is guilty of the conduct alleged . . ."  (Keach Mem. of Law at 23; Dkt. No. 182.)

Keach concedes he has been warned by other Northern District judges over the last six years about his uncivil behavior and discovery abuse.  In fact, this court personally warned him earlier in this litigation.  He

10

argues, however, that just because a lawyer is discourteous, it does not axiomatically follow that the lawyer is dishonest.  While he acknowledges prior warnings about uncivil behavior, he argues that he has often admitted those allegations and his admissions demonstrate honesty, not dishonesty.

Despite his arguments, Keach has failed to identify any evidence of bias or prejudice stemming from an extrajudicial source.  Moreover, the court affirmatively disclaims that any exist.  In reality, Keach simply speculates about the courts views, and does so because the court has now challenged his conduct twice in this case.  Indeed, lawyers are foolhardy if they fail to realize that judges assess their integrity and honesty during all judicial interactions.  Judges inevitably make credibility assessments in much of what they do - whether in the context of arguments advanced by counsel, testimony of witnesses, or, for that matter, when assessing mundane matters such as the genuineness of a proffered reason for an extension request.  For precisely that reason, the court would have no difficulty in making credibility determinations in this matter if required to do so.  When judging credibility, courts use the same tools employed by all rational human beings called upon to do the same.  Thus, a person's reputation for integrity may be critical which is precisely why lawyers must

recognize that their integrity is something they alone control.  Once relinquished, integrity is extremely difficult to retrieve.  Lastly, judges recognize that the burden of proof serves to resolve close credibility issues, and they typically impose a similar burden on themselves when deciding what, if any action, they ought to take.  Consequently, the court believes that more often than not, it errs on the side of caution.

In the court's view, there is no evidence of extrajudicial bias, prejudice, or impartiality in this record.  The only possible argument to the contrary is the court's recitation of Keach's prior history in other cases.  However, the court's only purpose in identifying that history was to afford Keach a fair opportunity to address it in any post-conference submission discussing the appropriateness of sanctions.  The court was not laboring under any predetermined conclusions drawn from allegations in other cases.  Accordingly, there is no bias or prejudice, and Keach's motion for recusal is denied.

### B. Sanctions

Because the court has recently discussed sanctions authority, a succinct summary is appropriate.  An attorney may be sanctioned: (1) pursuant to Fed. Civ. Pro. R. 11 if he files a paper for an improper purpose;

12

or (2) pursuant to the court's inherent authority if he acts in bad faith, vexatiously, wantonly, or for oppressive reasons; or (3) if he "multiplies the proceedings . . . unreasonably and vexatiously . . . ." *See Zlotnick v. Aretakis*, 572 F. Supp.2d 258, 271-273 (N.D.N.Y. 2008). In general, sanctions should be reserved for those instances of subjective bad faith on the part of the offending attorney.

As the court clearly intimated during the February 27 conference, the clouded legal issues in this district regarding sealed settlement documents do not warrant the imposition of sanctions. First of all, the court made no independent judgment regarding the propriety of sealing the documents in the first place. *See generally Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110 (2d Cir. 2006). Without an accompanying application to seal, the parties labeled the documents and the court simply filed them under seal. Furthermore, both parties had copies of the documents and they never executed a confidentiality agreement nor sought a protective order. Thus, it is not at all clear that disclosure of the documents would have violated a court order. Absent such clarity, the imposition of sanctions is not warranted.

The circumstances surrounding Keach's unsealing letter and his

accusations concerning *ex parte* communications are more troubling. Collectively, they cause the court to question his candor and honesty. Rather than simply apologize for having been less than fully forthcoming in his unsealing letter, his post-conference affidavit again reverts to his "perfecting an appeal" justification to explain his conduct in the first place. (*See Keach Affidavit*, Dkt. No. 182-1.)  As the earlier quoted colloquy demonstrates, Keach admitted that his search for publicity was a motivating factor in seeking to unseal.  Again, however, his post-conference affidavit is particularly sparse as to those details.  (*See id.* at ¶ 11.)  Furthermore, his publicity admission only surfaced during the colloquy after the court was essentially forced to cross-examine him.  So too, the genuineness of his position is undercut by the court's familiarity with routine Circuit procedures for gathering a sealed record.  That observation does not foreclose the possibility that a Circuit case manager may have suggested approaching the district court with an application to unseal.  Whether that actually occurred is irrelevant.  What is relevant is seeking judicial relief without complete candor as to why the relief is being sought in the first place.  As an officer of the court, counsel has a continuing duty of candor to the tribunal.  *Burns v. Windsor Ins. Co.*, 31 F.3d 1092,1095 (11th

14

Cir. 1994).

As for the *ex parte* accusation, the court will not hold a hearing to get at the so-called "truth." Keach should be mindful of two things. First chambers manages pending cases with detailed docket notations reflected in "chambers only entries" that are not otherwise available to the public. Conversations with attorneys are documented in those entries, especially when past experience demonstrates that such conversations should be documented. The court reviewed those entries before the February 27 conference. Secondly, Keach's same-day letter with its unrelated footnot disclaimer about allegations of misconduct suggests a concern on his part that someone might have construed the allegation in that way.

What has been said bears repeating. Judges routinely make credibility judgments. Lawyers who give away their integrity find it difficult to retrieve. Sanctions are appropriate when an attorney's representations subjectively reflect bad faith or, worse yet, when a statement is uttered as a baseless allegation of judicial misconduct. Nonetheless, judges tend to err on the side of caution, especially when - as the court observed during the conference colloquy - an attorney's livelihood is at stake.

**IV. Conclusion**

15

For the foregoing reasons, the court denies Keach's recusal motion, declines to impose judicial sanctions, and denies Greagan's motion for sanctions.

Accordingly, it is hereby

**ORDERED** that Keach's motion for recusal (Dkt. No. 182) is **DENIED**; and it is further

**ORDERED** that Greagan's motion for sanctions (Dkt. Nos. 176-77) is **DENIED**; and it is further

**ORDERED** that the court **DECLINES** to impose judicial sanctions pursuant to its order to show cause; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties.

**IT IS SO ORDERED.**

February 27, 2009
Albany, New York

_____
United States District Court Judge

16